Rockingham, } Sept. 1, 1925. }

### ARTHUR J. CONNER v. STATE & a.

The constitutional amendment of 1903, authorizing the taxation of polls, estates and other classes of property, including franchises and property when passing by will or inheritance, permits taxation based upon considerations other than the ownership, possession or enjoyment of property.

Under that amendment, the taxation of incomes is permitted.

Such taxation is not invalid upon the ground that it is double taxation, since it has been clearly authorized by the people through the constitutional amendment. Whatever disproportion is necessarily created by the tax is permitted.

Corporations may constitutionally be exempted from income taxes assessed upon individuals in respect to dividends and interest.

The state can tax a person over whom it has jurisdiction, as to all his intangible personal property. Where a tax is so laid, the doctrines of equality of rights and fair dealing between the states have been understood to preclude the taxation of nonresidents on account of like property.

If such taxation of both residents and nonresidents could be sustained, the inclusion of nonresidents is not essential to the validity of a tax upon intangibles, and one laid against residents only is valid.

PETITION, for the abatement of an income tax assessed by the tax commission under Laws 1923, s. 65. The commission denied the petition, and, upon appeal to the superior court, the facts were agreed and the case was transferred without ruling by *Doe*, J.

A part of the taxed income consisted of dividends upon the stock of corporations organized and doing business in this state.

The petitioner claims that the statute is unconstitutional because it imposes an income tax, because it lays a disproportional tax, and

because it provides for the taxation of individuals but not of corporations and of residents but not of nonresidents.

*Murchie & Murchie (Mr. Alexander Murchie* orally), for the plaintiff.

*Joseph S. Matthews,* assistant attorney general, and *Fletcher Hale (Mr. Hale* orally), for the defendant.

*Fred C. Demond* (orally), for the Concord Chamber of Commerce.

PEASLEE, C. J.   In 1903 a fundamental change was made in the people's grant of the taxing power.   In the generation just preceding that time, the idea that the constitutional provision for contribution of "his share" by each taxable party meant a share determined by a common and unvarying method had been unheld and amplified in great detail and with a wealth of argument.   *Edes* v. *Boardman,* 58 N. H. 580; *Morrison* v. *Manchester,* 58 N. H. 538; *Bowles* v. *Landaff,* 59 N. H. 164; *Gould* v. *Raymond,* 59 N. H. 260; *Robinson* v. *Dover,* 59 N. H. 521; *B. C. & M. Railroad* v. *State,* 60 N. H. 87; *State* v. *Express Co.,* 60 N. H. 219; *Franklin Street Society* v. *Manchester,* 60 N. H. 342.   It had been decided that the existing provisions of the constitution did not permit the laying of any inheritance tax. *Curry* v. *Spencer,* 61 N. H. 624; *Williams* v. *State,* 81 N. H. 341, 346.   Whether any form of income tax was then allowable, or whether taxation other than that upon polls must be limited to a levy upon estates, as that term had been treated in the discussion of taxation problems in the various cases upon this subject, was generally considered to be at least a matter of doubt.   Such a limitation had been judicially declared.   *State* v. *Express Company,* 60 N. H. 219, 236. "Taxation as understood here when the constitution was amended [1903] meant equal treatment to everyone and meant, when property was the basis or measure of the tax, a uniform rate, and it was also understood that equality and uniformity were essential characteristics of every process which could be included under the term taxation."   *Williams* v. *State,* 81 N. H. 341, 350.

In this situation, the convention of 1902 proposed and the people adopted a constitutional amendment providing that "The public charges of government or any part thereof may be raised by taxation upon polls, estates and other classes of property, including franchises and property when passing by will or inheritance."   Const., Part II, Art. 6.

The significance of the grant of power to lay an inheritance tax has since been the subject of litigation and judicial decision. The cases upon that subject establish that there is a disproportion inherent in the nature of such a tax, as compared with an annual tax upon estates; and that since power to lay an inheritance tax was granted, it must be assumed that the constitutional rule of proportionality (theretofore applied with more strictness than in other jurisdictions) was relaxed, so far as necessary for the imposition of the new tax in an efficient way.   *Thompson* v. *Kidder,* 74 N. H. 89; *Mann* v. *Carter,* 74 N. H. 345; *Williams* v. *State,* 81 N. H. 341, 346, 347.

Whether the provision for the taxation of "other classes of property" enlarges the legislative power has not been considered. The question is presented by this petition for the abatement of an income tax, laid under the provisions of the act of 1923. This statute provides for the taxation of dividends and interest; and resident individuals, partnerships and fiduciaries are taxable parties. Laws 1923, c. 65, s. 2. The fundamental question is whether authority has been given to lay a tax of this nature.

What was intended by the grant of power to tax "other classes of property"? Other provisions of the amendment show, by elimination, what it does not mean. It does not refer to any form of tax upon estates, that is to taxes upon ownership, possession or enjoyment of property. It had theretofore been decided that the term estates covers all these matters. *Morrison* v. *Manchester,* 58 N. H. 538; *Franklin Street Society* v. *Manchester,* 60 N. H. 342; *Curry* v. *Spencer,* 61 N. H. 624. It includes in terms franchises and inheritances; but it also includes something more. "Other classes of property, including franchises and property when passing by will or inheritance," plainly means, not only that the subjects specifically named were provided for, but also that others fairly embraced by the general description were intended to be covered.

As all property could be taxed as estate under the earlier constitutional provisions, it is clear that the term "other classes of property" refers to some element other than ownership, possession or enjoyment as the determining factor for taxability under the new grant of authority. Read in another way, the provision means that property may be taxed for reasons other than ownership. The test of taxability may be put upon other grounds. "Other classes of property" is here used as the equivalent for property otherwise classified. The incidence of the tax is to be determined by some fact

other than mere ownership. This is illustrated by the named class of inheritances. These are property, and taxable each year as estate. They are taxed annually because of ownership. They are made subject to another tax for another reason. The inheritance tax is imposed because of the fact that the estate has passed from ancestor to heir.

In the search for classifications of property to which the general provision in the amendment of 1903 could apply, the one that naturally and inevitably comes to mind is the receipt of income. The levy upon income was then a generally recognized method of taxation. Beyond any other that has been suggested, it is one to which the general description fitly applies. Unless the provision under consideration is to be wholly disregarded, the conclusion that it authorizes laying an income tax must be adopted.

It may be urged that as the amendment by implication limits the application of earlier and continuing constitutional provisions against discrimination, therefore nothing should be added to the amendment by implication; that these other provisions forbid the extension of the application of the amendment beyond its plain terms. It may be conceded that the argument is sound; but it does not control the present situation. The phrase "other classes of property" is not to be effaced from the amendment upon this ground. It is not a question of adding something by implication, but of giving some meaning to express terms. And since this provision cannot be given any effect, save by the limitation of other provisions, the intent to create that limitation must have existed and must be allowed to operate. It was understood, in 1903, that additional powers of taxation were being granted, and that existing constitutional limitations, necessarily in conflict with the new grant, were to be disregarded. *Williams* v. *State*, 81 N. H. 341, 350.

The power to tax other classes of property, or property classified in some way other than as estate, was granted. No form of tax coming within this description, which would not impinge upon the rules theretofore laid down as to constitutional limitations upon the power to tax property, has been suggested. It is believed that none can be found. The implied exception from earlier provisions is necessary if this phrase in the amendment is to be given any effect.

In the advisory opinions given to the house of representatives, in 1915, the majority suggested that there might be a grant of power to lay an income tax in this provision. But the point was not pressed, and the theory that a certain limited taxation of incomes was per-

missible under the provision for the taxation of estates was made the basis of the advice given. 77 N. H. 611, 617. The differences of opinion then expressed related almost wholly to the nature of an income tax, as compared with an annual tax upon estates. One error in the minority opinion is the conclusion that there is now no constitutional warrant for the imposition of an income tax. 77 N. H. 627. As above stated, such a tax is provided for by the amendment of 1903.

It is urged by the petitioner that the tax results in double taxation. It is said that as under our decisions an estate tax cannot be laid against a corporation, and another against its stockholders (*Smith* v. *Burley,* 9. N. H. 423; *Sawyer* v. *Nashua,* 59 N. H. 404; *Robinson* v. *Dover,* 59 N. H. 521; *Cheshire &c. Company* v. *State,* 63 N. H. 167), therefore a tax upon the dividends paid to the stockholder must be held to be invalid under like circumstances. It may be conceded, for the purposes of the argument that such procedure results in double taxation, within the meaning of that term as used in this jurisdiction. But that does not render the tax invalid, if the people have authorized its imposition. *Curry* v. *Spencer,* 61 N. H. 624, 630. Double taxation is but one form of disproportional taxation. *Robinson* v. *Dover,* 59 N. H. 521, 525. Disproportion in the tax, in the sense that taxes are laid in several ways rather than in one way, is not objectionable, in the absence of some constitutional prohibition of such procedure. The power to impose disproportional taxes is put beyond question when it is specifically permitted by constitutional provisions. If this were not so, the present inheritance tax and the annual tax upon estates could not be laid at the same time and as parts of one system of taxation.

In the discussion of the questions of proportionality and equality in the decisions before 1903, it was not said that a departure from those principles could not be accomplished by constitutional amendment. The principles involved are binding upon the legislature because they are declared in the constitution. Constitutional government implies the assent of the people to a compact. It is "the execution of a written agreement, creating a limited agency for the purchase of common benefit." *State* v. *Express Company,* 60 N. H. 219, 254. "Though proportion is the rule, an intention to subject themselves to disproportion in all or some of the details of defraying public charges can be proved 'by an express stipulation of the contract, or other competent evidence.' *State* v. *Express Company,* 60 N. H. 219, 255." *Thompson* v. *Kidder,* 74 N. H. 89, 92.

"The questions whether an annual distribution of public expense in proportion to the property of each taxpayer is the most equitable method, — whether in that or some other way the public charges can be met so as to be least of a burden to the people, — are questions of economics not open in a judicial forum, but properly considered and determined in a convention of the people engaged in arranging the terms of the social compact and settling the fundamentals of government." *Ib.*, 92, 93.

It is manifest that no income tax could be laid upon the increment of some property, while other property was taxed as estate, without creating a practical disproportion, as that term has heretofore been applied to the taxation of estates. If one party is taxed upon his income and also upon the corpus of his estate, he pays more than his neighbor who is taxed upon his estate only. If he is taxed upon his income only, his tax, in proportion to his estate, is less than his neighbor's. Whether this can or can not be explained, as matter of law, upon a theory that dividends are entities separate from the stock, the practical proposition that the taxes are out of proportion is unanswerable.

But the extent of double or other disproportional taxation created by the imposition of an income tax need not be passed upon. The question raised is settled by the decisions under the inheritance tax law. Whatever disproportion is necessarily created by the tax is permitted. *Thompson* v. *Kidder*, 74 N. H. 89; *Williams* v. *State*, 81 N. H. 341. "As the assessment in question is neither unequal nor unreasonable, and as its disproportion to the taxation of other property, inherent in the tax itself, must have been contemplated by the people in their special authorization of this tax, the conclusion is, that in so far as the question is determined by the power of the legislature . . . the tax . . . is valid." *Thompson* v. *Kidder, supra*, 98.

An income tax being permissible under the amendment of 1903, and such disproportion as here appears being a necessary incident to any effective income tax, the general rules of proportionality do not apply, as between the income tax and a tax upon estates, so far as that question is here presented. In view of this conclusion, the discussion of the subject of double taxation, in the dissent from the advice given to the house of representatives, in 1923, becomes immaterial. The interpretation of "other classes of property" had not been urged and was not then considered. That discussion was in denial of the proposition that an income tax could be upheld under

the grant of power to tax estates. It in no way questions the soundness of the decisions as to the inheritance tax, or their applicability to a grant of power to lay an income tax. 81 N. H. 553.

It is also urged that the act of 1923 is unconstitutional because corporations are not included in the list of those taxed. In the imposition of a tax laid because of the happening of an event, there are always difficult questions involved in so describing the event that the law will fairly reach all of the selected class and yet will not subject some to being taxed oftener (and therefore more) than others. Practically all corporations not created for eleemosynary purposes are dividend paying. The income they receive is passed on to their stockholders in the form of dividends, and is then subject to the tax. If the income were also taxed to the corporation when received by it, there would be a manifestly unequal burden placed upon the owners of the corporation. It is true that there may be corporations so organized that the benefit to members or owners therein comes in other ways than by the receipt of dividends. As to these there is a failure to tax. But the number of such aggregations, and the amounts involved, must be small. They may be said to be almost negligible, contrasted to the class wherein the income received by the corporation is paid to the stockholders as dividends.

But, in any event, the legislature had to choose between the alternatives of double taxation on the one hand and escape from taxation on the other. In selecting the course which avoided double taxation, the legislature did not exceed its right to make a reasonable classification of those who should be taxed. The situation is a necessary incident to the imposition of an income tax; and authority to deal with it in a reasonable way goes with the power to lay such a tax.

Objection is also made because the statute provides for a tax upon residents and not upon nonresidents. The tax is laid upon the principle that a state can tax a person over whom it has jurisdiction, as to all his intangible personal property. *Mann* v. *Carter*, 74 N. H. 345, 348, and cases cited; *Kerby* v. *Charlestown*, 78 N. H. 301. The tax applies to dividends earned in New York by a New York corporation, as well as to those earned and paid in this state. It is based upon jurisdiction over the taxpayer, without regard to the situs of the tangible property in which he is an owner and from which he receives income of the described and taxed class. Laws 1923, c. 65, ss. 2, 11. In this situation, it would be contrary to the New Hampshire doctrine of reasonableness and equality of taxation to also assert a power to tax here the income paid to nonresident stockholders in a local corpora-

tion. *Berry* v. *Windham*, 59 N. H. 288; *Robinson* v. *Dover*, 59 N. H. 521. It is said that power to proceed in such a manner has of late been claimed and exercised in many states. 37 Cyc. 802. Presumably a different view of the nature of the taxing power prevails in those jurisdictions, or it may be that the constitutional grant of power is broader than it is here. But whatever the reason for such action may be, it is so contrary to our ideas of fair dealing between the states and their taxpayers, that its adoption here, in denial of the principles laid down in *Berry* v. *Windham, supra,* and *Robinson* v. *Dover, supra,* is not required, even if it could be sustained under our constitution.

As stated at the beginning of this opinion, the constitutional amendment of 1903 made a radical change in the grant of the taxing power. Other questions as to the present limits of this power may hereafter arise. The foregoing discussion is not designed to anticipate matters not presented by this appeal. The present decision goes no further than to determine that the objections urged against the statute under consideration are not well grounded; and that no constitutional inhibition exists which would prevent the levy of the tax against this plaintiff.

*Petition dismissed.*

All concurred.