THE WILMINGTON, COLUMBIA and AUGUSTA RAILROAD CO. *v.* THE BOARD of COMMISSIONERS of BRUNSWICK COUNTY.

The right to value the tangible real and personal property of a Railroad corporation, as distinguished from its franchise, is vested by the Constitution in the Township Boards of Trustees.

Such franchise is capable of valuation, apart from the property which the corporation may happen to own; and a valuation of the franchise, does not necessarily or properly include a valuation of the corporate property.

The payment of a tax upon the franchise of a corporation, valued im_ properly and upon erroneous principles, is no defense against a tax legally levied by the county authorities under the general law.

PETITION, for relief from certain taxes, presented to defendants, and heard upon appeal by his Honor, *Judge Russell*, at Chambers, in BRUNSWICK county, the 19th day of May, 1874.

The plaintiff filed the following petition:

"STATE OF NORTH CAROLINA, ⎱
    County of Brunswick.    ⎰

*To the Board of Commissioners of Brunswick County:*

The Wilmington, Columbia and Augusta Railroad Company, a corporation duly created and existing by and under the laws of the State aforesaid, respectfully complains:

That the property of the said corporation has been improp-

erly valued, and that it is charged with an excessive tax. That the franchise of the said corporation has been duly given in and duly assessed for taxation for the current year, according to the provision of the 10th section of the act ratified the 28th day of February, A. D. 1873, and entitled " An act to provide for the collection of taxes by the State, and the several notices of the State, on property, polls and income;" (known as the " Machinery Act,") and the tax thereon has been paid. And notwithstanding the same, your Board has laid and assessed a large additional State and county tax on the road-bed, superstructure and land of this complainant, placing on the them all a lumping tax, of $      , which this complainant is advised is illegal.

Wherefore this complainant prays that the said last mentioned tax on its road-bed, superstructure and land be altogether remitted and set aside."

Upon the hearing of the foregoing petition, the Board of Commissioners found as a fact, that the tax upon the franchise of the said railroad, the plaintiff, had been paid ; that the tax complained of, is upon 35 35-100 miles of road-bed, superstructure and lands in Brunswick county, which were not listed for taxation by the complainant, being a separate and independent tax from that levied upon the franchise ; it being considered by the Board, that the two classes of property are entirely distinct in their character, and each equally subject to taxation. The Board further found, that the property was properly valued, &c.

The Board refused to grant the prayer of the petition and order the Company to pay cost, &c. From this order the Company appealed.

His Honor reversed the order made by the Board, and the Commissioners appealed to this Court.

*M.* and *A. T. & J. London,* for appellants.
*Strange* and *Smith & Strong,* contra.

RODMAN, J.    By the Constitution, ART. V. SEC. 3., all the real and personal property in the State, is required to be taxed uniformly according to its value.    There are certain exceptions not material for the present purpose.    The township trustees are required to assess the value of the taxable property in their respective townships, subject to the revision of the county commissioners. ART. VII, SEC. 6.    Under these clauses of the Constitution, and under acts of the Legislature made for carrying them into effect, the commissioners of Brunswick county have valued the land of the Wilmington, Columbia, &c., R. R. Co. over which the railroad passes, together with the superstructure of wooden cross ties, rails, station houses, &c., at $315,000, and have levied upon it a State and county tax upon that valuation.    The part of the road which lies in the county of Brunswick is a little over 35 miles in length, and it appears that the Company owns sixty feet on each side of the central line of the road, giving an area of about 500 acres.

The General Assembly is also authorized by the Constitution, ART. V. SEC. 3, to tax franchises, and incomes, provided that no income shall be taxed when the property from which the income is derived, is taxed.    Under this clause, the General Assembly enacted (Act 1872–'73, chap. 115, sec. 10,) that the value of the franchise and rolling stock of every railroad corporation should be given into the Treasurer of the State and should be valued by him and by the Governor and Auditor, and a tax levied thereon according to its value, uniform with the tax on other property, and that the tax upon the franchise and rolling stock collected in each county should be in proportion to the length of the road in such county.    In supposed conformity with this law, the Company gave in to the Treasurer all their real and personal property in the State, including the road-bed and superstructure, which the Governor and his associates apparently, valued at $150,000, (something less than half,) lying, and being taxable, in Brunswick county. The State and county taxes on this valuation were duly paid.

It does not distinctly appear from anything that we have before us, that the road-bed and superstructure were actually included in this valuation. We assume, however, as appears probable, that all the property of the Company was included in the valuation of its franchise.

It is contended for the Company, that the payment of the tax thus assessed, exempted it from all other taxation ; and it must be admitted that it could never have been the intention of the General Assembly to tax the property of the Company twice, viz: once in the way of real and personal property, under the general law, and once as a constituent part of its franchise, under the special act referred to. It may be, and we are of the opinion, that the Governor and his associates exceeded their powers under the Constitution in valuing anything but the franchise of the Company, if they did value any thing more, and if they valued the franchise alone, their valuation evidently proceeded upon an erroneous principle. As the Constitution *authorizes*, although it does not *require*, the General Assembly to tax franchises and provides no way in which the franchise may be valued, the Assembly may tax the franchise, and provide for its valuation, in any way that it thinks proper. There can be no question that it may tax it upon the valuation of a Board consisting of the Governor and other associates. But we conceive that the Assembly has no right to confer on such Board the power of valuing the tangible real and personal property of a railroad company. Such power is by the Constitution vested in the township trustees alone, and cannot be taken away from them. However difficult it may be practically to value the franchise of a railroad company separate from the property which it uses in the enjoyment of the franchise, it is possible to do so. The franchise has a value independent of the property actually used for the enjoyment of it. Every franchise to build a railroad, carries with it something of a monopoly or exclusion of others. The Company first chartered, of course selects the most available route, and of necessity excludes all others from that particular route. The

grant of a charter to run a railroad by the most available route between two populous cities, such as New York and Philadelphia, would have a pecuniary value, before the grantee of the charter had expended a dollar in procuring a road-bed. The patentee of a sewing machine, or other valuable invention, has an interest of pecuniary value, independent of the ownership of any material and tangible property.

A franchise to build or run a railroad between two insignificant towns, or through a desert would be of no value. We are not called on, and will not unnecessarily undertake to say upon what principles the franchise of a corporation should be valued. It fulfills the present purpose to say, that it is capable of a valuation apart from the property which the corporation may happen to own, and a valuation of the franchise does not necessarily or properly include a valuation of the corporate property.

If the Governor and his associates have valued the franchise of the plaintiff company on an erroneous principle, and have thereby overvalued it, the company is entitled in a proper case to relief from the consequent tax. But the payment of such tax is no defence against a tax legally levied by the county authorities under the general law.

It may be, and we think it probable that the valuation of the property of the company in the county of Brunswick is unreasonable and excessive. It does not appear to us on what principles the township or county officers proceeded, and consequently we cannot say that the valuation is wrong. If it was made to appear that they proceeded on an erroneous principle, we might perhaps correct their valuation ; but an error in the fact of the value of the property is beyond our power to correct.

We are not called on, and will not unnecessarily undertake to say as law, upon what principle the road bed and superstructure of a railroad should be valued. But it may be useful to suggest for the consideration of county officers, some views which seem reasonable. 1. The cost of a structure, whether

WIL. RAILWAY BRIDGE CO. *v* BOARD of COMM'RS. of NEW HANOVER CO..

it be a house, or a railroad, is not the test of its value for taxation. Many instances might be given to show that such a rule would be absurd. A man may build a very costly house in a place which is afterwards found out to be malarious, and it is consequently valueless for habitation. An inventor constructs a costly machine which from some fault does not work, &c.

2. Neither is the value of the ties and rails, if removed, a test. It may be doubted whether a railroad company, having accepted privileges under its charter, would have a right, upon finding its road unprofitable, to tear it up and deprive the public of its use. The true point of inquiry is, what is the value of the land and structure as it is actually used, or as it is capable of being used, without losing its character as a railroad.

We think the judgment of the Superior Court in this case must be reversed, and the case remanded, to be proceeded in, &c. Let this opinion be certified, &c.

PER CURIAM.                          Judgment reversed.